Lance H. Kirk (Cal. SBN 281850)
**LIONHEART LAW, PC**
205 16th St., Apt. B
Huntington Beach, California 92648
Tel: (949) 660-8753
Fax: (949) 660-8720
lkirk@calplaw.onmicrosoft.com

Alyssa J. White *(Pro Hac Vice)*
**Josephson Dunlap LLP**
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Tel.: (713) 352-1100
awhite@mybackwages.com

**COUNSEL FOR SAMPLEY & THE HOURLY EMPLOYEES**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**GARY SAMPLEY**, Individually and for Others Similarly Situated,

Plaintiff,

v.

**LEDCOR INDUSTRIES (USA) INC.**, **LEDCOR CMI INC.**, and **DOES 1-9** inclusive,

Defendants.

**Case No. 3:26-cv-02711-JES-JLB**
**Judge James E. Simmons Jr.**
**Magistrate Judge Jill L. Burkhardt**

**FIRST AMENDED CLASS & COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:**

(1) Failure to Pay Overtime Under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*);
(2) Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.016);
(3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;
(4) Failure to Pay Overtime Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018); and
(5) Failure to Pay All Wages Upon Termination Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018).

**DEMAND FOR JURY TRIAL**

## SUMMARY

1. Gary Sampley (Sampley) brings this class and collective action to recover unpaid wages and other damages from Ledcor Industries (USA) Inc. (Industries) and Ledcor CMI Inc. (CMI) (collectively Ledcor) for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2. Industries and CMI jointly employed Sampley as one of their Hourly Employees (defined below).

3. Industries and CMI jointly paid Sampley and the other Hourly Employees by the hour.

4. Sampley and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. However, Ledcor does not pay Sampley and the other Hourly Employees for all hours worked, including overtime hours.

6. Rather, Ledcor requires Sampley and the other Hourly Employees to put on protective clothing and safety gear necessary to perform their job duties and attend safety meetings, "off the clock," on their (or their client's) premises, prior to the start of their shifts.

7. Likewise, Ledcor requires Sampley and the other Hourly Employees to change out of and store their safety gear and protective clothing "off the clock" following the end of their shifts (¶¶ 6 and 7 collectively Ledcor's "pre/post shift off the clock policy").

8. But Ledcor does not pay Sampley and the other Hourly Employees for this time before and after their shifts.

9. Ledcor's pre/post shift off the clock policy violates the FLSA and Nevada law by depriving Sampley and the other Hourly Employees of wages, including overtime wages, for all hours worked.

10. Likewise, Ledcor automatically rounds Sampley's and the other Hourly

Employees' hours to reflect only their prescheduled shifts, despite these employees working beyond their prescheduled shifts, for Ledcor's primary benefit and to the detriment of the employees (Ledcor's "rounding policy").

11. Additionally, Ledcor fails to pay them overtime wages at the required premium rates.

12. Instead, Ledcor pays them non-discretionary bonuses, including production bonuses and safety bonuses, that it fails to include in their regular rates of pay for overtime purposes (Ledcor's "bonus pay scheme").

13. Lastly, Ledcor pays Sampley and the other Hourly Employees "per diems," based on the number of days and hours these employees actually work, but Ledcor excludes these "per diems" from their regular rates of pay for overtime purposes (Ledcor's "per diem pay scheme").

14. Ledcor's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme violate the FLSA and Nevada law by depriving Sampley and the other Hourly Employees of overtime at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

15. Likewise, Ledcor's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme violate Nevada law by depriving Sampley and other Hourly Employees of timely payment of earned wages for all hours worked, including overtime hours, upon termination of their employment.

## JURISDICTION & VENUE

16. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

17. This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18. This Court has general personal jurisdiction over Ledcor because CMI and

Industries each maintain their shared principal place of business in San Diego, California.

19. Venue is proper because Industries and CMI both maintain their principal place of business at 10180 Telesis Court, Suite 240, San Diego, California 92121, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

20. Ledcor employed Sampley in Nevada from approximately January 2007 until September 2024.

21. Ledcor classified Sampley as non-exempt and paid him by the hour.

22. Ledcor subjected Sampley to its pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme.

23. Sampley's written consent for Industries was attached as an Exhibit to the Original Complaint.

24. Sampley's written consent for CMI is attached as **Exhibit 1.**

25. Sampley brings this class and collective action on behalf of himself and similarly situated Ledcor employees.

26. The FLSA collective of similarly situated employees is defined as:

> **All hourly Ledcor employees who worked at any time from April 29, 2023[1] through final resolution of this action ("FLSA Collective Members").**

27. Sampley also seeks to represent a class under Nevada law pursuant to FED. R. CIV. P. 23.

28. The Nevada Class of similarly situated employees is defined as:

> **All hourly Ledcor employees who worked in Nevada at any time from April 29, 2022 through final resolution of this action ("Nevada Class Members").**

29. The FLSA Collective Members and Nevada Class Members are collectively

[1] The Original Complaint was filed April 29, 2026.

referred to as the "Hourly Employees."

30. Industries is a Washington corporation headquartered in San Diego.

31. Industries has been served and appeared in this matter through counsel.

32. CMI is a Nevada corporation headquartered in San Diego.

33. CMI may be served with process by serving its registered agent: **CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.**

34. Industries and CMI jointly control Sampley's and the other Hourly Employees' conditions of employment, such as payroll and timekeeping policies and practices.

35. Industries and CMI's names, logos, and/or addresses appear on Hourly Employees' official documentation, such as offer letters.

36. Industries and CMI share common management and ownership.

37. For example, John Kump serves as the Chief Financial Officer of both corporations, and Thomas Lofaro likewise serves as the Chief Legal Officer and Secretary of both.

38. Industries and CMI further share the same ownership and management through David Lede as "Chairman of the Board and CEO of the Ledcor Group of Companies."[2]

39. Each of the fictitiously named defendants participated in the acts alleged in this Complaint.

40. The true names and capacities of the defendants named as DOES 1 through 9, inclusive, are presently unknown to Sampley.

41. Sampley will amend this Complaint, setting forth the true names and capacities of these fictitiously named defendants when their true names are ascertained.

---

[2] https://www.ledcor.com/who-we-are/executive-profiles (last visited July 20, 2026).

42. Sampley is informed and believes, and on that basis alleges, that each of the fictitious defendant(s) has participated in the acts alleged in this Complaint.

## FLSA Coverage

43. At all relevant times, Ledcor has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

44. At all relevant times, Ledcor has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

45. At all relevant times, Ledcor has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as personal protective equipment, tools, computers, tablets, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

46. At all relevant times, Ledcor has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

47. At all relevant times, Sampley and the other Hourly Employees have been Ledcor's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

48. At all relevant times, Sampley and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

## Facts

49. Ledcor holds itself out as "one of the few companies to offer turnkey solutions to mining companies across North America … [through its] innovative contract mining services, [which] enable [it] to drive-out unnecessary costs by aligning [its] efforts with clients at an operational level."[3]

50. To meet its business objectives, Ledcor hires workers, like Sampley and the

[3] https://www.ledcor.com/what-we-do/mining (last visited April 6, 2026).

other Hourly Employees.

51. Through its website, Ledcor advertises its open jobs and solicits applications for these open positions across the United States.[4]

52. For example, Ledcor employed Sampley as an equipment operator from approximately January 2007 until September 2024 in Nevada.

53. Sampley's job duties included operating heavy mining equipment, ensuring machines operated smoothly, maintaining compliance with safe operating guidelines, loading haul trucks, and delivering materials to dump sites, as directed by Ledcor.

54. Sampley's job duties likewise included donning and doffing safety gear and protective clothing and attending safety meetings, "off the clock," on Ledcor's (or its client's) premises before and after his shifts.

55. Ledcor paid Sampley approximately $30 an hour.

56. Throughout his employment, Sampley worked approximately 4 to 5 days a week and 12 hours a day "on the clock" (48-60 hours a workweek).

57. Likewise, the other Hourly Employees similarly work approximately 48 to 60 hours per workweek "on the clock."

58. Ledcor tracks Sampley's and the other Hourly Employees' "on the clock" hours using the timekeeping system it selects and controls.

59. But throughout their employment, Ledcor has not paid Sampley and the other Hourly Employees for all their hours worked.

60. Instead, Ledcor subjects Sampley and the other Hourly Employees to its pre/post shift off the clock pay scheme.

61. For example, Ledcor required Sampley to dress out in his protective clothing and safety gear (including hard hat, reflective clothing, ear protection, steel-toed boots, safety glasses, gloves), and attend safety meetings, "off the clock," on its or its client's

[4] https://www.ledcor.com/careers/why-work-here (last visited April 6, 2026).

premises.

62. This took Sampley approximately 15 to 25 minutes each workday.

63. Sampley could not safely perform his job duties in accordance with Ledcor's policies, procedures, and expectations without this protective clothing and safety gear and without attending the required meetings.

64. Indeed, much of the safety gear Sampley must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*.

65. The donning of protective clothing and safety gear and obtaining appropriate safety instruction were thus integral and indispensable work duties for Sampley because these duties were fundamentally intertwined with his other mining job duties.

66. Likewise, Ledcor required Sampley to remove and store his safety gear and protective clothing after his shift, while "off the clock" and without compensation.

67. This took Sampley approximately 10 to 15 minutes each workday.

68. Ledcor required Sampley to remove his safety gear and protective clothing in accordance with Ledcor's policies, procedures, and expectations.

69. The required removal and storage of his safety gear and protective clothing were therefore integral and indispensable work duties for Sampley.

70. But under its pre/post shift off the clock policy, Ledcor did not compensate him for the same.

71. Thus, because of its pre/post shift off the clock policy, Ledcor failed to pay Sampley wages for all hours worked, including overtime wages for overtime hours.

72. Sampley and the other Hourly Employees perform their jobs under Ledcor's supervision and use materials, equipment, and technology Ledcor approves and supplies.

73. Ledcor requires Sampley and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

74. At the end of each pay period, Sampley and the other Hourly Employees

receive wages from Ledcor that are determined by common systems and methods that Ledcor selects and controls.

75. But, just as with Sampley, Ledcor fails to pay the other Hourly Employees for all their hours worked.

76. Indeed, Ledcor subjects the other Hourly Employees to its pre/post shift off the clock policy.

77. Specifically, like Sampley, Ledcor requires the other Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, reflective clothing, ear protection, steel- toed boots, safety glasses, gloves), and attend pre-shift safety meetings, prior to their shifts, on Ledcor's (or its client's) premises "off the clock," and without compensation.

78. As with Sampley, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*.

79. And Ledcor requires the other Hourly Employees to remove and store their safety gear and protective clothing after their shifts, "off the clock" and without compensation.

80. But, like Sampley, the other Hourly Employees are forced to perform this compensable work "off the clock" before and/or after their scheduled shifts.

81. And, just as with Sampley, Ledcor does not pay the other Hourly Employees for this integral and indispensable work they perform "off the clock" before and after their scheduled shifts on Ledcor's (or its client's) premises.

82. And like Sampley, these job duties take the other Hourly Employees approximately 25 to 40 minutes each workday.

83. Additionally, Ledcor subjects Sampley and the other Hourly Employees to its rounding policy.

84. Specifically, Ledcor rounds Sampley's and the other Hourly Employees'

hours worked to reflect only their prescheduled shifts, despite these employees working beyond their prescheduled shifts.

85. For example, Ledcor typically scheduled Sampley to work a 12-hour shift and only paid Sampley for 12 hours, even when he worked more.

86. Ledcor's rounding policy benefitted Ledcor to the detriment of Sampley and the other Hourly Employees by undercounting their hours worked.

87. Ledcor fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its (or its client's) premises that Ledcor does not want performed.

88. And Ledcor knows, should know, or recklessly disregards whether Sampley and the other Hourly Employees routinely perform work "off the clock," and without compensation.

89. Thus, Ledcor requires, requests, suffers, or permits Sampley and the other Hourly Employees to work "off the clock," without compensation.

90. Despite accepting the benefits, Ledcor does not pay Sampley and the other Hourly Employees for compensable work they perform.

91. Further, throughout their employment, Ledcor paid Sampley and the other Hourly Employees according to its bonus pay scheme.

92. Specifically, Ledcor agreed to pay and subsequently paid Sampley and the other Hourly Employees nondiscretionary bonuses, such as safety bonuses and productivity bonuses, calculated at least in part based on the number of hours worked, in accordance with Ledcor's criteria.

93. But Ledcor fails to include these nondiscretionary bonuses in Sampley's and the other Hourly Employees' regular rates of pay for overtime purposes.

94. For example, Ledcor paid Sampley production and safety bonuses of approximately $400, approximately quarterly, but excluded these bonuses from his regular rate of pay for overtime purposes during workweeks in which he earned the bonuses and

worked more than 40 hours.

95. Finally, Ledcor fails to pay Sampley and the other Hourly Employees all overtime wages under its per diem pay scheme.

96. Specifically, Ledcor pays Sampley and the other Hourly Employees "living out allowances," but only for days these employees actually perform work, unrelated to expenses actually incurred.

97. Moreover, Sampley and other Hourly Employees have worked for Ledcor on discrete projects for well over a year.

98. And Ledcor knew that these projects (such as its Pan Mine project, where Sampley worked) would continue well beyond one year.

99. Sampley and other Hourly Employees worked at Ledcor's Pan Project in excess of the IRS's one-year time limit defining "temporary employment" for per diem purposes. *See*, Rev. Rul. 93-86, 1993-2 C.B. 71.

100. Thus, the "per diems/living out allowances" Ledcor pays Sampley and the other Hourly Employees are not payments reasonably calculated to reimburse business expenses incurred while temporarily working away from home, but rather, are wages that must be included in their regular rates of pay for overtime purposes.

101. But Ledcor excludes these wages from Sampley's and the other Hourly Employees' regular rates of pay for overtime purposes during workweeks in which they earn the "per diems/living out allowances" and work more than 40 hours.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

102. Sampley brings his claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to FED. R. CIV. P. 23.

103. Like Sampley, the other Hourly Employees are victimized by Ledcor's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and/or per diem pay scheme.

104. Other Hourly Employees worked with Sampley and indicated they were paid

in the same manner, performed similar work, and were subject to Ledcor's same pre/post shift off the clock policy, rounding policy, bonus pay scheme, and/or per diem pay scheme.

105. Based on his experiences with Ledcor, Sampley is aware that Ledcor's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme were imposed on other Hourly Employees.

106. The Hourly Employees are similarly situated in the most relevant respects.

107. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages.

108. Rather, the Hourly Employees are held together by Ledcor's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme, which systematically deprive them of required wages, including required overtime wages, for all hours worked, including hours in excess of 40 hours in a workweek.

109. Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

110. Ledcor's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

111. The Hourly Employees are denied earned wages, including overtime wages at the required premium rates when they work more than 40 hours in a workweek.

112. Ledcor's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

113. Ledcor's records show that it automatically rounded the Hourly Employees' hours to reflect only their prescheduled shifts.

114. Ledcor's records likewise show it paid the Hourly Employees nondiscretionary bonuses and "per diems" it failed to include in their regular rates of pay

for overtime purposes.

115. The back wages owed to Sampley and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

116. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Ledcor's records, and there is no detraction from the common nucleus of liability facts.

117. Therefore, the issue of damages does not preclude class or collective treatment.

118. Sampley's experiences are typical of the experiences of the other Hourly Employees.

119. Sampley has no interest contrary to or in conflict with the other Hourly Employees that would prevent class or collective treatment.

120. Sampley has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Nevada law.

121. Sampley and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

122. Sampley retained counsel with significant experience in complex class and collective action litigation.

123. A class and collective action is superior to other available means for fair and efficient adjudication of this action.

124. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Ledcor will reap the unjust benefits of violating the FLSA and Nevada law.

125. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

126. Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Ledcor.

127. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

128. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

129. Among the common questions of law and fact are:

a. Whether Ledcor's pre/post shift off the clock policy failed to compensate the Hourly Employees for all hours worked;

b. Whether Ledcor's pre/post shift off the clock policy deprived the Hourly Employees of overtime when they worked more than 40 hours in a workweek;

c. Whether Ledcor automatically rounded the Hourly Employees' hours to reflect only their prescheduled shifts, for its benefit and to the detriment of the Hourly Employees;

d. Whether Ledcor's bonus pay scheme deprived the Hourly Employees of overtime wages at the required rate, based on all remuneration, when they worked more than 40 hours in a workweek;

e. Whether Ledcor paid the Hourly Employees "per diems" based on time worked and unrelated to expenses;

f. Whether Ledcor failed to include the "per diems" in calculating the Hourly Employees' regular rates of pay;

g. Whether Ledcor's violations deprived the Hourly Employees of earned wages, including overtime wages, upon termination of employment;

h. Whether Ledcor's decision not to pay the Hourly Employees all wages due was made in good faith; and

i. Whether Ledcor's violations were willful.

130. There are many similarly situated Hourly Employees who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

131. The Hourly Employees are known to Ledcor and can be readily identified and located through its business and personnel records.

**LEDCOR'S VIOLATIONS WERE WILLFUL**

132. Ledcor knew it was subject to the FLSA's overtime provisions and Nevada law's minimum wage, hours of work, overtime, and earned wages provisions.

133. Ledcor knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, for all hours worked, including overtime at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

134. Ledcor knew each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

135. Ledcor knew it paid its Hourly Employees according to its pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme.

136. Ledcor knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

137. Ledcor knew it required the Hourly Employees to don and doff safety gear and protective clothing and attend meetings, on its or its client's premises "off the clock."

138. Ledcor knew it controlled the Hourly Employees' work procedures.

139. Ledcor knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

140. Ledcor knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

141. In other words, Ledcor knew its Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing and attending

meetings) "off the clock" and without compensation.

142. Ledcor knew it automatically rounded the Hourly Employees' hours to reflect only their prescheduled hours, even when they worked more.

143. Ledcor knew it paid the Hourly Employees non-discretionary bonuses that it excluded from their regular rates of pay for overtime purposes.

144. Ledcor also knew it paid the Hourly Employees "living out allowances" that in reality were wages that it excluded from their regular rates of pay for overtime purposes.

145. Ledcor knew its pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme failed to compensate the Hourly Employees for all hours worked, including overtime hours, at the required rates.

146. Ledcor knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

147. Ledcor knowingly, willfully, and/or in reckless disregard carried out its pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme, which systematically deprived the Hourly Employees of earned wages, including overtime for hours worked over 40 in a workweek, in violation of the FLSA and Nevada law.

148. Indeed, Ledcor (and/or related entities) has previously been sued for failing to pay overtime wages as required by the FLSA. *See, e.g.*, *Osborne v. Ledcor Construction Inc.*, Case No.: 3:08-cv-01238-L (N.D. Tex.).

## <u>COUNT I</u>
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
## (FLSA COLLECTIVE)

149. Sampley brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

150. Ledcor violated, and is violating, the FLSA by employing non-exempt employees (the FLSA Collective Members) in a covered enterprise for workweeks in excess

of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

151. Ledcor's unlawful conduct harmed the FLSA Collective Members by depriving them of the overtime wages they are owed.

152. Accordingly, Ledcor owes the FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

153. Because Ledcor knew, or showed reckless disregard for whether, its pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme violated the FLSA, Ledcor owes the FLSA Collective Members these wages for at least the past 3 years.

154. Ledcor is also liable to the FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

155. Finally, the FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## COUNT II
## FAILURE TO PAY FOR ALL HOURS WORKED
## (NEVADA CLASS MEMBERS)

156. Sampley brings his claim for failure to pay for all hours worked as a class action on behalf of himself and the other Nevada Class Members under Nevada law pursuant to FED. R. CIV. P. 23.

157. Sampley has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

158. At all relevant times, Ledcor was subject to Nevada law because Ledcor was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

159. At all relevant times, Ledcor employed each Nevada Class Member as a

covered "employee" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

160. NRS 608.016 provides that "an employer shall pay to the employee[s] wages for each hour the employee[s] worked." Nev. Rev. Stat. § 608.016.

161. Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

162. Ledcor failed to compensate the Nevada Class Members for all hours worked, as described in this Complaint.

163. Accordingly, Sampley "bring[s] a civil action to recover the difference between the amount paid to [the Nevada Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

164. As noted, Ledcor did not compensate the Nevada Class Members for integral and indispensable work before and after their shifts, performed under Ledcor's direction and control and on Ledcor's (or its client's) premises.

165. Nevada's Minimum Wage Amendment to the Nevada Constitution, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

166. The Nevada Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Ledcor's company-wide policies and practices.

167. As a direct and proximate result, the Nevada Class Members have suffered, and continue to suffer, substantial damages.

168. Ledcor regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to the Nevada Class Members.

169. Through this unlawful course of conduct, Ledcor has deprived and continues

to deprive the Nevada Class Members of records necessary to calculate with precision the compensation due to them.

170. Ledcor's actions were (and are) willfully oppressive, fraudulent and malicious, entitling the Nevada Class Members to punitive damages.

171. Ledcor's violations were intentional.

172. In accordance with N.R.S. 608.140, demand has been made to Ledcor for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

173. Accordingly, the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

## **COUNT III**
## **FAILURE TO PAY MINIMUM WAGES**
## **(NEVADA CLASS MEMBERS)**

174. Sampley brings his failure to pay minimum wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

175. Sampley has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

176. At all relevant times, Ledcor was subject to Nevada law because Ledcor was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

177. At all relevant times, Ledcor employed each Nevada Class Member as a covered "employee" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

178. Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

> The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or her reasonable attorney's fees and costs.

179. Accordingly, the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

**COUNT IV**
**FAILURE TO PAY OVERTIME WAGES**
**(NEVADA CLASS MEMBERS)**

180. Sampley brings his failure to pay overtime claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

181. Sampley has a private cause of action for unpaid overtime wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

182. At all relevant times, Ledcor was subject to Nevada law because Ledcor was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

183. At all relevant times, Ledcor employed each Nevada Class Member as a covered "employee" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

184. Nevada law requires that employers, such as Ledcor, pay employees, such as the Nevada Class Members, at least 1.5 times their regular rate of pay for all hours worked in excess of 40 in a workweek. Nev. Rev. Stat. § 608.018(2).

185. The Nevada Class Members have been deprived of their overtime wages at

the required rates—based on all remuneration—for all hours worked in excess of 40 in a workweek as a direct and proximate result of Ledcor's pre/post shift off the clock policy, rounding policy, bonus pay scheme, and per diem pay scheme.

186. Ledcor regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to the Nevada Class Members.

187. Through this unlawful course of conduct, Ledcor has deprived and continues to deprive the Nevada Class Members of records necessary to calculate with precision the overtime compensation due to them.

188. Ledcor's actions were willfully oppressive, fraudulent and malicious, entitling the Nevada Class Members to punitive damages.

189. Ledcor's violations were intentional.

190. In accordance with N.R.S. 608.140, demand has been made to Ledcor for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

191. Accordingly, the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

## COUNT V
## FAILURE TO PAY ALL WAGES UPON TERMINATION
## (NEVADA CLASS)

192. Sampley brings his failure to timely pay wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

193. Sampley has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783

(Nev. 2017).

194. At all relevant times, Ledcor was subject to Nevada law because Ledcor was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

195. At all relevant times, Ledcor employed the Nevada Class Members as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

196. When an employer, such as Ledcor, terminates employees, such as the Nevada Class Members, their earned but unpaid wages and compensation become due and payable immediately at the moment of discharge or become due and payable to a quitting or resigning Nevada Class Member within 7 days or the next regular payday. Nev. Rev. Stat. §§ 608.020 and 608.030.

197. Employers that do not pay discharged employees all earned wages "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due" and pay quitting or resigning employees "on the day the wages or compensation is due" are subject to a penalty equivalent to "the wages or compensation of the employee at the same rate from the day the employee resigned, quit or was discharged or placed on nonworking status until paid or for 30 days, whichever is less." Nev. Rev. Stat. § 608.040(1)(a)-(b).

198. NRS 608.050 grants that "[e]very employee shall have a lien as provided in NRS 108.221 to 108.246, inclusive, and all other rights and remedies for the protection and enforcement of such salary or wages as the employee would have been entitled to had the employee rendered services therefor in the manner as last employed" for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default." Nev. Rev. Stat. § 608.050.

199. By failing to pay the Nevada Class Members for all hours worked (including earned regular wages and/or overtime wages) at the required rates, based on all remuneration, Ledcor has failed to timely pay all wages due and owing to the Nevada Class

Members who have separated employment.

200. Ledcor's violations were intentional.

201. In accordance with N.R.S. 608.140, demand has been made to Ledcor for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

202. The Nevada Class Members who are no longer employed by Ledcor are entitled to recover an additional 30 days' wages under NRS 608.050, plus costs, interest, and attorneys' fees, as provided by Nevada law, and all other appropriate relief under Nevada law, including all available damages and penalties.

## JURY DEMAND

203. Sampley demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Sampley, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Sampley and his counsel to represent the interests of the Hourly Employees;

d. An Order finding Ledcor liable to Sampley and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties owed under the FLSA, plus interest;

e. An Order finding Ledcor liable to Sampley and the Hourly Employees for their unpaid minimum wages, overtime wages,

earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

f. A Judgment against Ledcor awarding Sampley and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or Nevada law;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Date: October 1, 2026

Respectfully submitted,

*/s/ Alyssa J. White*
Alyssa J. White (*Pro Hac Vice*)
**Josephson Dunlap LLP**

**COUNSEL FOR SAMPLEY & THE HOURLY EMPLOYEES**

**DEMAND FOR JURY TRIAL**

Sampley hereby demands a jury trial on all claims and issues, as he and the other Hourly Employees are entitled to a jury.

Date: October 1, 2026

Respectfully submitted,

*/s/ Alyssa J. White*
Alyssa J. White (*Pro Hac Vice*)
**Josephson Dunlap LLP**

**COUNSEL FOR SAMPLEY & THE HOURLY EMPLOYEES**